UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JONATHAN D. LIND

    Plaintiff.

                                                             Case No:

    v.

EQUIFAX INFORMATION SERVICES, LLC.;
EXPERIAN INFORMATION SERVICES, LLC/ NCAC;
TRANS UNION, LLC;
COMPASS BANCSHARES, INC. d/b/a BBVA COMPASS

    Defendants.
_____/

**COMPLAINT**
**(& Jury Demand)**

COMES NOW, Plaintiff, **Jonathan D. Lind** (*hereinafter* Plaintiff), on behalf of himself and by and through undersigned counsel, files this complaint against Defendants, **Equifax Information Services, LLC.** (*hereinafter* Equifax), **Experian Information Services, LLC/NCAC** *(hereinafter* Experian), **Trans Union, LLC** (*hereinafter* TU), **Compass Bancshares Inc.** (*hereinafter* BBVA) and for violations of the Fair Credit Reporting Act and the Florida Consumer Collection Practices Act, and in support thereof would state the following:

**JURISDICTION**

1. This is an action for damages brought by an individual consumer against the named Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq., as amended, (*hereinafter* FCRA) and Florida Consumer Collection Practices Act – F.S. §559 et seq. (2012)*, (hereinafter* FCCPA).

2. Jurisdiction of this Court arises under 15 U.S.C. §1681p and Supplemental jurisdiction rests upon 28 U.S.C. §1367.

3. The Plaintiff is a resident and as such a citizen of the State of Florida as well as a "consumer" as that term is defined by 15 U.S.C. §1681 et seq. and a "debtor" as defined by F.S. §559 et seq.

4. Defendant, Equifax, is a business entity that regularly conducts business in the State of Florida and, as such, is a citizen of the State of Florida. The Defendant is a "credit reporting agency" and also a "furnisher of information" as defined and stated under 15 U.S.C. §§ 1681 et seq., as amended.

5. Defendant, Experian, is a business entity that regularly conducts business in the State of Florida and, as such, is a citizen of the State of Florida. The Defendant is a "credit reporting agency" and also a "furnisher of information" as defined and stated under 15 U.S.C. §§ 1681 et seq., as amended.

6. Defendant, TU, is a business entity that regularly conducts business in the State of Florida and, as such, is a citizen of the State of Florida. The Defendant is a "credit reporting agency" and also a "furnisher of information" as defined and stated under 15 U.S.C. §§ 1681 et seq., as amended.

7. Defendant, BBVA, is a business entity that regularly conducts business in the State of Florida and, as such, is a citizen of the State of Florida. The Defendant is a "furnisher of information" as defined and stated under 15 U.S.C. §§ 1681 et seq., as amended and a "creditor" as defined by F.S. §559 et seq.

## **VENUE**

8. The venue in the United States District Court for the Southern District of Florida is proper and based upon the following:

   a. The violations of the FCRA alleged below occurred in **Miami-Dade County,** State of Florida within the Southern District of Florida;

   b. At all times material hereto, Defendant, Equifax was, and continues to be a corporation engaged in business activities in **Miami-Dade County**, Florida and, as such, is a citizen of the State of Florida.

   c. At all times material hereto, Defendant, Experian, was, and continues to be a corporation engaged in business activities in **Miami-Dade County**, Florida and, as such, is a citizen of the State of Florida.

   d. At all times material hereto, Defendant, Trans Union, was, and continues to be a corporation engaged in business activities in **Miami-Dade County**, Florida and, as such, is a citizen of the State of Florida.

   e. At all times material hereto, Defendant, BBVA was, and continues to be a corporation engaged in business activities in **Miami-Dade County**, Florida and, as such, is a citizen of the State of Florida.

   f. The Plaintiff, is an individual residing in **Miami-Dade County**, Florida and, as such, is a citizen of the State of Florida.

## FACTS COMMON TO ALL COUNTS

9. That on or about December 16, 2016, Plaintiff applied for an unsecured line of credit with Defendant BBVA Compass intending to use the money for business purposes only. At the time, although he remained a Florida citizen, he was living in Texas.

10. That due to the Plaintiff's outstanding credit situation and score, a line of credit for a $20,000.00 limit was extended by BBVA and after initially utilizing some of the available credit line, the Plaintiff paid off the money used from the line in full.

11. That at or about the same time, and based on the Plaintiff's outstanding credit and the provision of the line of credit, BBVA also extended an offer to the Plaintiff for a credit card ending in 6815 with a separate credit limit of $20,000, even though Plaintiff had neither requested it and essentially had no practical use for it.

12. That on or about December 23, 2016, the Plaintiff had to return to live in Miami, Florida due to personal reasons and contacted BBVA providing a new mailing address in Miami in order to receive both the credit card and to have all his future statements sent to the new address as well.

13. After a period of time in which the credit card did not arrive to the new address, the Plaintiff became concerned and called BBVA to advise that he had not yet received the credit card that BBVA was to send to the new address and they assured him that the card was on its way.

14. The card never arrived and a few weeks later the Plaintiff received an email alert from U-Haul stating that he had an unpaid balance for goods and services for which he had no knowledge of.

15. After contacting U-Haul directly by phone, they explained to the Plaintiff the reason for the open balance and provided the name and number of the credit card used to procure the goods and services from U-Haul in the Plaintiff's name. It turned out that the credit card in question was the BBVA card ending in 6815 that the Plaintiff never received.

16. Plaintiff then contacted BBVA directly to report the card as either lost or stolen and was informed by a representative of BBVA that there was an outstanding balance on the card of $19,894.92 even though the Plaintiff never requested it, received it, nor used it in the first place.

17. Shortly thereafter, the Plaintiff filed a fraud affidavit with BBVA in accordance with their fraud protection and dispute policy and included requested documentation as to his identity that included a copy of his current driver's license with picture and a birth certificate. Additionally, Plaintiff subsequently filed a police report regarding the stolen credit card with the Miami-Dade Police Department.

18. Apparently, after BBVA allegedly conducted an internal fraud investigation, the Plaintiff was advised by correspondence that his fraud claim was being denied based on the contention of BBVA that for the few days the card was used, a driver's license and/or some other form of identification had been provided with at least some of the alleged fraudulent purchases or use of the card including excessive spending at a Miami area "gentleman's club" and a cash advance of approximately $9,900.00.

19. That additionally BBVA provided the Plaintiff with a copy of a sales receipt from this same establishment titled "BTS North Merchandise" totaling $4,012.00 approved by an apparent manager of the institution with a copy of the phony driver's license or identification card presented for proof of identity. (See attached as Exhibit 1)

20.     That a copy of this driver's license or identification card relied on by the defrauded merchant and BBVA was provided to the Plaintiff as well for review, however the picture on the license was clearly not the Plaintiff and he alerted BBVA to this fact.

21. Despite this obvious case of fraudulent use of a lost or stolen credit card, BBVA continued to maintain that the Plaintiff had an outstanding balance of $19,894.00 which includes all fraudulent purchases made and has reported this balance against the credit line with a $20,000.00 limit to all major credit reporting agencies. (See attached as Exhibit 2).

22. That during the same time period (January 9-12, 2017) when the BBVA credit card ending in 6815 was being fraudulently used, the Plaintiff was actually using his usual and preferred credit card ending in 6358 and issued by another institution that he had prior to obtaining the line of credit from BBVA to make numerous purchases in the normal course of his daily activities. (See attached as Exhibit 3).

23. Despite his disagreement with the results of the BBVA investigation and their contention that he was responsible for the repayment of the outstanding balance, the Plaintiff has been forced to make at least minimum payments of $382.00 as recently as June 22, 2017 and July 3, 2017 in order to not have his account go into default and cause additional harm to his already affected credit. (See attached composite as Exhibit 4).

24. On May 11, 2017, The Plaintiff through The Dokovna Law Firm filed a formal dispute to credit report agency Equifax regarding the inaccurate account balance with BBVA and the specific reasons for the dispute, (see copy of correspondence attached hereto as Exhibit 5).

25. The dispute was received and an investigation was allegedly undertaken by Equifax to determine the accuracy of the disputed accounts and information provided by the furnisher of the information, BBVA.

26. Equifax then requested the Plaintiff to provide various documents to assist them in their investigation as to either fraud or identity theft including but not limited to a copy of the Plaintiff's actual driver's license, social security card and Birth Certificate all of which were provided along with correspondence dated June 7, 2017. (See attached copy of correspondence as Exhibit 6).

27. Despite receipt of the May 11, 2017, dispute letter and the investigation into the accuracy of the disputed information and account, the trade line as contained in the Plaintiff's Equifax consumer credit report, continues to show as an open account with an outstanding and past due balance.

28. On May 11, 2017, The Plaintiff through The Dokovna Law Firm filed a formal dispute to credit report agency Experian regarding the inaccurate account balance with BBVA and the specific reasons for the dispute, (see copy of correspondence attached hereto as Exhibit 7).

29.     The dispute was received and an investigation was allegedly undertaken by Experian to determine the accuracy of the disputed accounts and information provided by the furnisher of the information, BBVA.

30. On June 12, 2017 Experian advised the Plaintiff that with regard to the BBVA account, "Outcome: Remains – This item was not changed as a result of our processing of your dispute." (See attached as Exhibit 8).

31. Despite receipt of the May 11, 2017, dispute letter and the investigation into the accuracy of the disputed information and account, the trade line in the Plaintiff's Experian consumer credit report continues to show as an open account with an outstanding and past due balance.

32. On May 11, 2017, The Plaintiff through The Dokovna Law Firm filed a formal dispute to credit report agency Trans Union regarding the inaccurate account balance with BBVA and the specific reasons for the dispute, (see copy of correspondence attached hereto as Exhibit 9).

33. On May 22, 2017, Trans Union advised the Plaintiff that with regard to the BBVA account, "We have received the request for the above referenced consumer. The results will be forwarded to him or her to review." (See attached as Exhibit 10).

34. Despite receipt of the May 11, 2017, dispute letter and the investigation into the accuracy of the disputed information and account, the trade line in the Plaintiff's Trans Union consumer credit report continues to show as an open account with an outstanding and past due balance.

35. On May 16, 2017, The Plaintiff through the Dokovna Law Firm filed a formal dispute BBVA Compass – Dispute Department regarding the inaccurate account balance with BBVA and the specific reasons for the dispute, (see copy of correspondence attached hereto as Exhibit 11).

36. Despite receipt of the May 16, 2017, dispute letter BBVA continues to furnish information to the credit bureaus of an outstanding balance of $19,894.00 and continues to maintain that the Plaintiff is liable for the payment of this amount.

37. That on June 19, 2017, the Plaintiff in an attempt to increase his credit limit on his Master Card Gold Card account ending in 0489, and despite a credit score of 734 the request was denied based on the reason of "High Amount of Credit Available from Other Accounts" as reported by Trans Union. (See attached as Exhibit 12).

38. That previously and before the payoff on the original credit line, the Plaintiff requested an increase to his credit line on his Master Card Gold Card account ending in 0489, and despite a credit score of 773 the request was denied based on the reason of "High Amount of Credit Available from Other Accounts" as reported by Trans Union. (See attached as Exhibit 13).

39. That it is obvious that the Plaintiff's credit score was affected by the fraudulent charges and has caused him harm to his ability to obtain credit.

40. Upon receipt of the dispute letters, Equifax, Experian, and Trans Union are required by law to conduct a proper and timely investigation and contact BBVA to notify them of the Plaintiff's dispute and request that they, also, investigate the dispute.

41. Defendants, Equifax, Experian, Trans Union, and BBVA failed to update and correct the erroneous reporting regarding the Plaintiff's Account.

42. As a direct result of these actions, Equifax, Experian, Trans Union and BBVA have misinformed third parties as to the status of this account.

43. The Defendants, Equifax, Experian, and Trans Union have provided credit information which is incorrect, inaccurate, misleading, and false.

44. Plaintiff has been damaged as a direct and proximate cause of Equifax's actions as he was unable to obtain credit or otherwise recover his credit worthiness due to the damage to his credit worthiness.

45. Plaintiff has been damaged as a direct and proximate cause of Experian's actions as he was unable to obtain credit or recover his credit worthiness due to the damage to his credit worthiness.

46. Plaintiff has been damaged as a direct and proximate cause of Trans Union's actions as he was unable to obtain or recover his credit worthiness due to the damage to his credit worthiness.

47. Plaintiff has been damaged as a direct and proximate cause of BBVA's actions as he was unable to obtain credit or recover his credit worthiness due to the damage to his credit worthiness.

48. That the Plaintiff has been damaged because this misleading information and errors have impaired his ability to build his credit worthiness.

## COUNT ONE

### Violations of the FCRA - 15 U.S.C. §1681s-2(b) by Equifax Information Services, LLC

46. Plaintiff re-alleges and incorporates paragraphs 1 through 45 above as if fully stated herein.

47. At all times pertinent hereto, Equifax was a "person" as well as a "furnisher of information" to the credit reporting agencies as those terms are defined by 15 U.S.C. § 1681a(b).

48. Equifax violated 15 U.S.C. §1681n and 1681o by engaging in the following conduct in violation of § 1681s-2(b) of that Act.  Specifically, Equifax willfully or negligently violated these provisions of the FCRA in the following manner:

    a. By willfully or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

    b. By willfully or negligently failing to review all relevant information concerning the Plaintiff's account as provided;

    c.    By willfully or negligently failing to report the results of their investigation of the inaccurate information to all credit reporting agencies;

    d.    By willfully or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

    e.    By willfully or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

    f.    By willfully or negligently failing to permanently block the reporting of the inaccurate information as disputed by the Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to all credit reporting agencies;

    g.    By willfully or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

49. As a result of the conduct by Equifax, the Plaintiff suffered damages with loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain and anguish from credit denials.

50. If the conduct by Equifax was willful, it would render them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

51. In the alternative, if the conduct was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681(o).

52. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Equifax in an amount to be determined by the Court pursuant to § 1681n and 1681o.

## **COUNT TWO**

**Violations of the Fair Credit Reporting Act - FCRA - 15 U.S.C. §1681s-2(b) by Experian**

53. Plaintiff re-alleges and incorporates paragraphs 1 through 52 above as if fully stated herein.

54. At all times pertinent hereto, Experian was a "person" as well as a "furnisher of information" to the credit reporting agencies as those terms are defined by 15 U.S.C. § 1681a(b).

55. Experian violated 15 U.S.C. §1681(n) and (o). Specifically, by engaging in the following conduct in contravention of § 1681s-2(b) of the FCRA:

    a. Willfully or negligently failing to conduct an investigation of information Plaintiff disputed;

    b. Willfully or negligently failing to review all relevant information concerning the Plaintiff's account as provided;

    c. Willfully or negligently failing to report the results of their investigation of the information to all credit reporting agencies;

    d. Willfully or negligently failing to modify or delete any incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

    e. Willfully or negligently failing to modify or delete any inaccurate or incomplete information after conducting a reinvestigation;

    f. Willfully or negligently failing to block the reporting of any inaccurate information, and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to other credit reporting agencies;

    g.    Willfully or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

56. As a result of the conduct by Experian, Plaintiff suffered damages from loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain and anguish from credit denials.

57. If the conduct by Experian was willful, it would render them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58. In the alternative, if the conduct was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o.

59. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from the Experian in an amount to be determined by the Court pursuant to § 1681n and 1681o.

## COUNT THREE

### Violations of the Fair Credit Reporting Act - FCRA - 15 U.S.C. §1681s-2(b) by Trans Union

60. Plaintiff re-alleges and incorporates paragraphs 1 through 59 above as if fully stated herein.

61. At all times pertinent hereto, Trans Union was a "person" as well as a "furnisher of information" to the credit reporting agencies as those terms are defined by 15 U.S.C. § 1681a(b).

62. Trans Union violated 15 U.S.C. §1681n and 1681o by engaging in the following conduct that violated § 1681s-2(b) of that Act. Specifically, Trans Union willfully or negligently violated these provisions of the FCRA in the following manner:

    h.    By willfully or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

    i.    By willfully or negligently failing to review all relevant information concerning the Plaintiff's account as provided;

    j.    By willfully or negligently failing to report the results of their investigation of the inaccurate information to all credit reporting agencies;

    k.    By willfully or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

    l.    By willfully or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

    m.    By willfully or negligently failing to permanently block the reporting of the inaccurate information as disputed by the Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to all credit reporting agencies;

    n.    By willfully or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

63. As a result of the conduct by Trans Union, the Plaintiff suffered damages with loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain and anguish from credit denials.

64. If the conduct by Trans Union was willful, it would render them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

65. In the alternative, if the conduct was negligent, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681o.

66. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from the Trans Union in an amount to be determined by the Court pursuant to § 1681n and 1681o.

## COUNT FOUR

### Violations of the Fair Credit Reporting Act - FCRA - 15 U.S.C. §1681s-2(b) by BBVA

67. Plaintiff re-alleges and incorporates paragraphs 1 through 66 above as if fully stated herein.

68. At all times pertinent hereto, BBVA was a "person" as well as a "furnisher of information" to the credit reporting agencies as those terms are defined by 15 U.S.C. § 1681a(b).

69. BBVA violated 15 U.S.C. §1681n and 1681o by engaging in the following conduct that violated § 1681s-2(b) of that Act.  Specifically, BBVA willfully or negligently violated these provisions of the FCRA in the following manner:

- o. By willfully or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;
- p. By willfully or negligently failing to review all relevant information concerning the Plaintiff's account as provided;
- q. By willfully or negligently failing to report the results of their investigation of the inaccurate information to all credit reporting agencies;
- r. By willfully or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;
- s. By willfully or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

    t.    By willfully or negligently failing to permanently block the reporting of the inaccurate information as disputed by the Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to all credit reporting agencies;

    u.    By willfully or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

70. As a result of the conduct by BBVA, the Plaintiff suffered damages with loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain and anguish from credit denials.

71. If the conduct by BBVA was willful, it would render them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

72. In the alternative, if the conduct was negligent, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681o.

73. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from the BBVA in an amount to be determined by the Court pursuant to § 1681n and 1681o.

<b><u>COUNT FIVE</u></b>

<b><u>Violations of the Florida Consumer Collections Practices Act – FCCPA - FS §559.55 et seq. by Defendant BBVA</u></b>

74. Plaintiff re-alleges and incorporates paragraphs 1 through 73 above as if fully stated herein.

75. The Defendant, BBVA, has violated F.S. §559.72(6) by failing to disclose information concerning the existence of a debt known to be reasonably disputed by the debtor. Despite

having clear knowledge of the fraudulent nature of the debt, BBVA continued to report the account as open with an outstanding and past due balance.

76. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BBVA in an amount to be determined by the Court pursuant to § 559. Et seq.

77. WHEREFORE, the Plaintiff demands judgment for actual damages plus interest, statutory damages, injunctive relief, costs, punitive damages and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that judgment be entered against the Equifax, Experian, Trans Union and BBVA for an award of actual, statutory, and punitive damages; attorney's fees and the costs of litigation including pre and post-judgment interest at the legal rate; and such other relief the Court deems just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiff is entitled to and hereby demands a trial by jury as stated in the U.S. Constitution, Amendment 7 and F.R.C.P. 38.

Dated this 11 day of August, 2017.

Respectfully Submitted by,

/S/Jared Dokovna_____

**Jared Dokovna, Esq.**
**The Dokovna Firm**
**6231 PGA Blvd, Ste 104-242**
**Palm Beach Gardens, FL 33418**
**Phone 786-220-1665; Fax 305-397-1271**
**Jared@Dokovna.com**